UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ALL GREEN CORPORATION, A DELAWARE CORPORATION D/B/A GREEN COUNTRY LAWN AND LANDSCAPE | CIVIL ACTION NO. 20-0121 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BRIAN WESLEY, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Dismissal (Record Document 19) filed by Defendants Brian Wesley ("Wesley"), Monica Rawls ("Rawls"), Tim Weatherton, Jeriquies "Jay" Smith ("Smith"), Edd Boyd, and Organny Green Lawns, LLC a/k/a Southern Green Lawn Care ("Southern Green").[1] Plaintiff, All Green Corporation d/b/a Green Country Lawn and Landscape ("Green Country") opposes the Motion. See Record Document 27. Defendants have filed a reply. See Record Document 32. For the foregoing reasons, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART.**

## FACTUAL AND PROCEDURAL BACKGROUND

Green Country is a professional lawn care business with longstanding success in the Ark-La-Tex region spanning over two decades. See Record Document 10 at ¶1. Each of the individual Defendants were employed by Green Country in a variety of positions ranging from technicians to managers. See id. at ¶19. In January 2020, however, all left

---

[1] Green Country does not provide a d/b/a designation to Southern Green because Organny Green Lawns, LLC has not registered the name with the Louisiana Secretary of State. See Record Document 10 at ¶10. However, Green Country does recognize that Organny does business under the name "Southern Green Lawn Care," hence the a/k/a classification.

Page **1** of **20**

the company virtually simultaneously and began working for Southern Green in direct competition with their former employer. See id. at ¶33.

Green Country alleges Defendants, alongside its former CFO Kreg Culler ("Culler"), started planting seeds for their own business while still employed. In May 2019, Culler and Wesley organized Organny Green Lawns, LLC with the Louisiana Secretary of State. See id. at ¶21. Green Country believes Defendants began using their Customer List and stationery to make overtures to existing Green Country customers shortly before departing, and ultimately downloaded and removed documents to take with them to their new operation in aid of solicitation of new business. See id. at ¶¶35-39. These solicitations included false and disparaging portrayals of Green Country. See id. at ¶40. Finally, Green Country accuses Rawls of canceling at least sixteen pre-paid services with existing customers on the day of her resignation. See id. at ¶44.

According to Green Country, Defendants continued to make use of its Customer List after leaving the company in support of their new business. See id. at ¶45. Southern Green has also sent out familiar advertisements, utilized the same pricing scheme, and created a website with a similar layout to that of Green Country, creating confusion amongst Green Country customers. See id. at ¶¶47-52.

The Court entered a Consent Preliminary Injunction on March 16, 2020, placing various restrictions on Southern Green with respect to its use of Green Country's company property and solicitation of its customers. See Record Document 18. After months in a holding pattern, the instant Motion was filed shortly after Green Country requested dates for a Rule 26(f) conference and expressed its intent to commence discovery. See Record Document 27 at 2.

This lawsuit grows out of alleged improprieties committed by Defendants both while employed by Green Country and after forming Southern Green. Green Country claims nine causes of action against Defendants. See Record Document 10. Defendants' Motion seeks to dismiss Green Country's claims for: (1) trademark infringement, (2) trademark dilution and blurring, (3) fraud, (4) conversion, (5) treble damages pursuant to the Louisiana Unfair Trade Practices Act ("LUTPA"), (6) breach of contract, and (7) unjust enrichment. See Record Document 19. They also seek to remove all conspiracy allegations related to these substantive claims. See id.

## LAW AND ANALYSIS

### I.     Legal Standard

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A complaint attacked by Rule 12(b)(6) does not need detailed factual allegations but requires more than labels and conclusions. See Twombly, 550 U.S. at 555. Importantly, a "formulaic recitation of the elements of a cause of action will not do." Id. When evaluating a pleading, courts must construe the complaint liberally and accept all factual allegations as true. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2009). However, courts need not accept legal conclusions as facts. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

## II.     Analysis

Prior to analyzing the substantive arguments made in Defendants' Motion, the Court must first address a dispute over what documentary evidence it may consider. Although generally courts are not permitted to review materials outside of the pleadings when ruling on a 12(b)(6) motion to dismiss, limited exceptions do exist. See Haygood v. Begue, 2014 WL 1320152 at *1 (W.D. La. Mar. 31, 2014). Specifically, a court may consider documents that are referenced in the plaintiff's complaint and are central to plaintiff's claims. See Scanlan v. Texas A&M University, 343 F.3d 533, 536 (5th Cir. 2003).

In dispute are two affidavits from customers of Green Country attached to Plaintiff's opposition memorandum. See Record Documents 27-3 & 27-6. Neither affidavit—nor particular customer name—is referenced in Plaintiff's complaint. Therefore, the Court cannot consider these attached exhibits in evaluating the instant Motion. The Court can and will consider all other attached documents to both Defendants' Motion and Plaintiff's opposition, as these exhibits were referenced in Plaintiff's complaint and are key to specific claims.

### A. Trademark Infringement

To prevail on a claim of federal trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must show (1) ownership of a legally protectable mark and (2) a likelihood of confusion created by an infringing mark.[2] See Nola Spice Designs, LLC v. Haydel Enters., Inc., 783 F.3d 527, 536 (5th Cir. 2015). A legally protectable mark must

---

[2] The "likelihood of confusion" prong is not in dispute at this time, and the Court is satisfied that Green Country had sufficiently pled allegations to satisfy it. As such, it will not be analyzed.

be distinctive either (1) inherently or (2) through an acquired secondary meaning. See Am. Rice, Inc. v. Producers Rice Mill, Inc. 518 F.3d 321, 329 (5th Cir. 2008). Registration of a mark with the U.S. Patent and Trademark Office is "prima facie evidence that the mark is inherently distinctive." Nola Spice Designs, 783 F.3d at 537.

Acquired distinctiveness through secondary meaning "occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself."[3] Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210-11, 120 S.Ct. 1339 (2000). The Fifth Circuit has articulated seven factors courts must consider when evaluating a mark for secondary meaning. These factors include: (1) length and manner of use of the mark, (2) volume of sales, (3) amount and manner of advertising, (4) nature and use of the mark in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the mark. See Pebble Beach Co. v. Tour 18 I Ltd., 155 F.3d 526, 541 (5th Cir. 1998).

Green Country believes Southern Green has unlawfully infringed upon the "Green Country" name by using its name on envelopes, its stationery, its pricing strategy, and its longstanding likeness and brand recognition. See Record Document 10 at ¶58. Southern Green argues Green Country fails to make sufficient factual allegations in demonstration of an acquired secondary meaning. See Record Document 19-1 at 4. They further argue Green Country does not own the intellectual property rights for its pricing scheme, and therefore cannot claim infringement of this strategy. See id. at 5.

---

[3] The parties agree that Green Country's mark lacks inherent distinctiveness and secondary meaning must be established to succeed on a trademark infringement claim.

The existence of secondary meaning—and trademark infringement claims generally—is a highly fact-intensive inquiry relying heavily upon evidence produced during discovery. See New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc., 697 F.Supp.2d 415, 428 (W.D.N.Y. Mar. 19, 2010) (citing Igloo Products Corp. v. Brandtex, Inc., 202 F.3d 814, 818 (5th Cir. 2000)). Consequently, the vast majority of case law pertaining to these types of actions takes place at the summary judgment stage and consists of a factor-by-factor analysis. See e.g., Board of Supervisors of Louisiana State University v. Smack Apparel Co., 438 F. Supp.2d 653 (E.D. La. July 18, 2006). However, at the 12(b)(6) stage, the inquiry remains one of plausibility and courts recognize that evidence on all seven factors may not be present. See id. at 429. Thus, several circuits have held long-term, exclusive use of a mark to be significant evidence of secondary meaning. See Int'l. Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco, 329 F.3d 359, 370 (4th Cir. 2003); Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 295 (7th Cir. 1998); Stuart Hall Co., Inc. v. Ampad Corp., 51 F.3d 780, 789 (8th Cir. 1995).

In support of an acquired secondary meaning of its mark, Green Country repeatedly stresses its longstanding success within the Ark-La-Tex community spanning over two decades. See Record Document 10 at ¶¶1, 15, 16, 56. Green Country emphasizes that customers throughout the region have come to know and trust their name when looking for reliable and quality lawn care services. See id. at ¶16. Green Country also states that its marketing strategy, particularly its use of its color scheme, is designed in aid of creating secondary meaning for its brand for Ark-La-Tex customers, and further discusses the specifics of this design scheme in terms of its trade dress

claims. See id. at ¶¶18, 67-70. Lastly, its pleading details many of the steps taken by Defendants to appropriate Green Country customers, charging that many of their initial business decisions were intended to capitalize on Green Country's success and reputation in the community by tying Southern Green to Green Country.[4] See id. at ¶33, 35-37.

Defendants attempt to equate Green Country's pleadings to the threadbare assertions of secondary meaning made in a recent case before the Eastern District of Louisiana. See Express Lien, Inc. v. Handle, Inc., 2020 WL at *12 (E.D. La. Mar. 3, 2020). This Court, however, finds meaningful distinction between the singular conclusory statement reciting the definition of secondary meaning present in Express Lien and the overarching description of Defendants' attempts to capitalize on their former employer's mark, notoriety, and success. While the pleading may not address all of the factors required to demonstrate an acquired secondary meaning, the Court is satisfied that an initial showing of plausibility has been made with respect to an unauthorized use of the "Green Country" name on envelopes, stationery, and overall brand and likeness.

However, a similar showing has not been made with respect to Green Country's pricing strategy. As emphasized in Southern Green's motion, documents attached to the Amended Complaint outlining the pricing strategy at issue reveal it to be copyrighted by Real Green Systems. See Record Documents 10-5 & 10-6. Green Country makes no attempt to detail their relationship with this company, nor do they allege facts as to how they possess standing to claim infringement upon property owned by Real Green

---

[4] The Court is particularly taken by alleged mailings sent to Green Country customers inside Green Country envelopes containing a brief letter from Defendants attempting to persuade customers to move their business.

Systems. Tellingly, they also do not counter this point in their opposition memorandum to this Motion. The Court cannot allow such claims to proceed without any factual basis concerning Green Country's ownership of this pricing scheme. However, in lieu of dismissal, the Court is inclined to grant Green Country an opportunity to amend their Complaint to clarify their relationship with Real Green Systems as it pertains to their pricing scheme and related claims.

While Green Country's claims will certainly need additional sprucing with respect to the numerous secondary meaning factors, the Court believes such absences are not fatal at this stage of this litigation. After discovery has commenced, the parties (and the Court) will have a better understanding of whether Green Country's claims for trademark infringement hold sufficient water. At this point, with the exception of those claims pertaining to its pricing scheme, Green Country has provided sufficient pleadings to survive a motion to dismiss. Green Country shall amend their pricing scheme claims within twenty-eight (28) days of this ruling to reflect the nature of their relationship with Real Green Systems.

### B. Trade Dress Dilution and Blurring

Trade dress refers to "the total image and overall appearance of a product," including the size, shape, colors, textures, graphics, and sales techniques that characterize the product. Frank's Casing Crew & Rental Tools, Inc. v. David L. Sipos Vermilion River Tool & Equipment Co., 2005 WL 1567307 at *3 (W.D. La. June 28, 2005). As stated by both parties, although the Lanham Act establishes separate causes of action for trademarks and trade dress, the same test is utilized to analyze the protectability of each. See Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 235, n. 8 (5th Cir.

2010). Thus, a plaintiff must demonstrate (1) their trade dress is legally protectable, either inherently or via secondary meaning; and (2) their trade dress has been infringed, which requires considering the likelihood of confusion. See TWTB, Inc. v. Rampick, 152 F. Supp.3d 549, 572-73 (E.D. La. Jan. 20, 2016).

Green Country alleges its trade dress has been diluted through Defendants' use of its color scheme, design, and pricing methodology. See Record Document 10 at ¶64. Southern Green raises the same arguments made in contention of Green Country's trademark infringement claims. See Record Document 19-1 at 5. Once again, the Court finds plausible allegations have been made to state a claim for trade dress dilution, with the exception of those related to pricing scheme. Green Country has sufficiently described its green and yellow color scheme and how it has been developed with customers in mind. See Record Document 10 at ¶70. However, it has not addressed its relationship with Real Green Systems and its effect on the pricing strategy. As a result, the Court will permit the dilution claims pertaining to color scheme and design to proceed, but Green Country must amend its pricing strategy claims within twenty-eight (28) days of this ruling.

### C. Fraud

Article 1953 of the Louisiana Civil Code defines fraud as a misrepresentation or suppression of the truth made with intent to either obtain an unjust advantage for one party or to cause a loss to another. See La. Civ. Code Ann. art. 1953. Fraud may also flow from silence or inaction. See id. A delictual or tort fraud claim requires (1) a misrepresentation of material fact (2) made with the intent to deceive (3) causing justifiable reliance with resulting injury. See Newport Ltd. v. Sears, Roebuck & Co., 6 F.3d 1058, 1068 (5th Cir. 1993). Federal Rule of Civil Procedure 9(b) assigns a heightened

pleading standard for claims of fraud, providing that "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Green Country alleges Defendants committed fraud through their use of Green Country return labels on mailings to prospective customers, along with specific disparaging misrepresentations they made concerning Green Country. See Record Document 10 at ¶76-77. They also allege Rawls fraudulently canceled and refunded prepayments prior to her exit from Green Country. See id. at ¶78. Defendants argue for dismissal of these fraud claims because no misrepresentations were made to Green Country, and consequently, no reliance occurred. See Record Document 19-1 at 5.

A nearly identical situation to the instant matter has recently been addressed within this district. See People Source Staffing Professionals, L.L.C. v. Robertson, 2019 WL 3432606 (W.D. La. July 15, 2019). In Robertson, an employer sued its former employees for conspiracy to commit fraud following a mass exodus and subsequent efforts to "poach and misappropriate." Id. at *2. The individual defendants moved for a 12(b)(6) dismissal, arguing any misrepresentations or suppressions of the truth were made to customers, vendors, or service providers, as opposed to the former employer itself. See id. at *6. Nevertheless, the court held the plaintiff's complaint had alleged sufficient facts to suggest that, at least while employed, the former employees had committed fraud by omission in scheming together to open a rival business and hiding their plans from their employer. See id. at *7.

Green Country's pleadings similarly state specific factual allegations that, if true, would demonstrate fraud. Green Country alleges Defendants and Culler began preparing

to exit the company and start their own business in the months prior to their total departure in January 2020. See Record Document 10 at ¶21. They also allege property and documents were taken by Defendants upon their resignations and solicitations were sent inside Green Country envelopes to existing customers encouraging them to follow their former service providers to Southern Green. See id. at ¶¶34-35; Record Documents 10-2 & 10-3. Green Country's Amended Complaint also details several disparaging statements allegedly made by Defendants about their former employer. See Record Document 10 at ¶¶40-43. Finally, Green Country states and provides documentary evidence that Rawls canceled and refunded at least sixteen pre-paid customers on the day of her resignation. See id. at ¶44; Record Document 10-4. Based on these well-pleaded factual allegations, dismissal of Green Country's fraud claim is not warranted.

### D. Conversion

Under Louisiana law, a conversion is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel. See Dual Drilling Co. v. Mills Equipment Investments, Inc., 721 So.2d 853, 857 (La. 1998). Generally, incorporeal or intangible property cannot be the subject of a conversion action; however, intangible property can be converted if the right is embodied in or merged into a document. See BASF Agrochemical Products v. Unkel, 2006 WL 3533133 at *7 (W.D. La. Dec. 7, 2006) ("This rule is commonly thought

to apply to intangibles, such as stock certificates and bonds, which represent valuable intangible property rights").

Green Country alleges the tort of conversion was committed through the download and removal of its Customer List by Rawls. See Record Document 10 at ¶83. Defendants argue the Customer List constitutes intangible property or an incorporeal movable, and therefore such a claim is not cognizable. See Record Document 19-1 at 7.

The case law Defendants cite for this proposition is quite distinct from the Customer List at issue in the instant matter, as these cases involve obvious intellectual property lacking any physical manifestation. See Uptown Grill, LLC v. Shwartz, 2017 WL 2312882 at *9-10 (E.D. La. May 26, 2017) (conversion not applicable to incorporeal movables such as trademark and trade dress of business); Unkel, 2006 WL 3533133 at *7 (claim for conversion could not lie when subject of action was rights in trademark). The Fifth Circuit has considered the issue of conversion, under Texas law,[5] of customer lists as confidential information. See D'Onofrio v. Vacation Publications, Inc., 888 F.3d 197, 213 (5th Cir. 2018). In reversing a grant of summary judgment on this issue, the court held that although the only tangible item the plaintiff had taken was a laptop computer, confidential information and trade secrets in electronic form, including customer lists, could be merged into documents and thus may have been converted. See id.

The Court agrees that the mere electronic nature of Green Country's Customer List should not preclude a claim for state law conversion. While the taking of a physical

---

[5] Texas law on conversion is nearly identical substantively to that of Louisiana, in that it too prohibits causes of action for intangible property except in cases when an underlying intangible right has been merged into a document and that document has been converted. See Express One Int'l, Inc. v. Steinbeck, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet).

Rolodex would state a much more obvious claim for conversion under Louisiana law, a customer list in Word document format is undoubtedly capable of being merged into a physical document, and thus a claim for conversion may proceed.

Defendants make the additional argument that an action for conversion cannot lie because such a tort claim is preempted by the Louisiana Uniform Trade Secrets Act ("LUTSA"). See Record Document 19-1 at 8. When the subject of a conversion action is a trade secret, LUTSA applies and the statute explicitly preempts Louisiana state tort, restitutionary, and other misappropriation laws. La. Stat. Ann. § 51:1437. The Fifth Circuit has recently addressed this issue, holding that the plain text of LUTSA precludes a civilian law conversion claim involving confidential information that qualifies as a trade secret. See Brand Services, L.L.C. v. Irex Corp., 909 F.3d 151, 158 (5th Cir. 2018). However, the court, finding support from state appellate courts, also concluded "if confidential information that is not a trade secret is nonetheless stolen and used to the unjust benefit of the thief or detriment of the victim, then a cause of action remains under Louisiana law."[6] Id.

Throughout its pleadings, Green Country refers to its Customer List as a "trade secret." See Record Document 10 at ¶¶88-97. Despite this classification, it argues the finder of fact could find the List does not qualify as a trade secret, therefore rendering LUTSA inapplicable. See Record Document 27 at 21. Essentially, Green Country is

---

[6] The Fifth Circuit's "unjust benefit" language in Brand Services is not to be construed as providing for an explicit unjust enrichment cause of action for non-trade secrets, but rather stands for the proposition that various Louisiana state law remedies are not preempted.

asking the Court to treat these conflicting arguments as alternative claims for relief,[7] a permissible step at the 12(b)(6) stage of litigation.

Determining whether information qualifies as a trade secret under LUTSA is a question of fact. See Johnson Controls, Inc. v. Guidry, 724 F. Supp.2d 612, 629 (W.D. La. July 12, 2010). Louisiana courts have also held that "a customer list or special pricing list may be a trade secret if efforts are made to maintain its secrecy." See Innovative Manpower Solutions, LLC v. Ironman Staffing, LLC, 929 F. Supp.2d 597, 612 (W.D. La. Mar. 7, 2013) (quoting Pontchartrain Med. Labs. Inc. v. Roche Biomedical Labs., Inc., 677 So.2d 1086, 1090 (La. App. 1st Cir. 1996)).

Green Country certainly has stated plausible factual allegations sufficient to establish it shielded its Customer List from prying eyes before it was misappropriated by Southern Green to the new company's benefit. Yet, the possibility remains that the trier of fact could ultimately find the Customer List does not meet the standard for protection under LUTSA. While Green Country's LUTSA and conversion claims eventually will be unable to coexist, at this early stage in the litigation, the Court must allow alternative, but plausible claims for relief to proceed. See Duresseau v. Camping World of Lafayette, 2018 WL 1954295 at *3 (W.D. La. Apr. 4, 2018).

### E. LUTPA Treble Damages

Defendants next move to dismiss the portion of Green Country's Complaint seeking treble damages pursuant to LUTPA. See Record Document 19-1 at 8. The

---

[7] If Green Country's Customer List is found to constitute a trade secret, LUTSA will preempt a state law conversion claim. However, if the Customer List does not qualify as a trade secret, LUTSA will not apply and Green Country will have to turn elsewhere for recovery.

relevant portion of this statute provides: "If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained." La. R.S. § 51:1409(a).

It is undisputed that Defendants have not yet received notice from Attorney General Jeff Landry. Nevertheless, Green Country argues against dismissal of any claim for treble damages because it believes consideration of the issue of damages at this stage would be premature, and in its opinion, notice from the Attorney General could be forthcoming.[8] See Record Document 27 at 22-23.

Regardless of the inconsistent case law from the Eastern District of Louisiana on this issue, Green Country's claim for treble damages pursuant to LUTPA is not cognizable. The plain language of the statute itself is clear that treble damages are only available if, after given notice by the Attorney General, the defendant continues the alleged violative practice. See La. R.S. § 51:1409(a); Konecranes, Inc. v. Robaina, 2000 WL 41208 at *3 (E.D. La. Jan. 18, 2000). Attorney General Landry has yet to provide notice to Defendants, and a Consent Preliminary Injunction has been entered effective until the conclusion of this matter on the merits. See Record Document 18. Under these circumstances, the treble damages provision of LUTPA will not be triggered.

This Court has addressed and dismissed claims for specific types of damages at the 12(b)(6) stage while allowing underlying claims to proceed. See Foster v. Jeter, 2020 WL 6731637 at *3 (W.D. La. Nov. 16, 2020) (dismissing claims for punitive damages and attorney's fees). A similar situation arises here. Green Country's claim for treble damages

---

[8] Green Country theorizes the COVID-19 pandemic has caused delays in the Attorney General's office that could explain the absence of an issuance of notice.

pursuant to LUTPA may not proceed; however, the underlying claim for recovery under this statute remains intact in all other respects.

### F. Breach of Contract

In Louisiana, a breach of contract claim has three essential elements: (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation, and (3) the failure to perform resulted in damages to the obligee. See IberiaBank v. Broussard, 907 F.3d 826, 835 (5th Cir. 2018). In order to survive a 12(b)(6) motion to dismiss, a plaintiff must point towards a specific contractual provision that was breached in order to state a valid claim. See Thomas Clements v. Hancock Whitney Bank, By Merger with MidSouth Bancorp, 2020 WL 7405656 at *2-3 (W.D. La. Nov. 23, 2020) (citing Whitney Bank v. SMI Cos. Global, Inc., 949 F.3d 196, 205 (5th Cir. 2020)).

Green Country addresses its breach of contract claim in a single paragraph, alleging Defendants' "use, disclosure and dissemination of Green Country Customer Lists, marketing products and methodologies and other confidential information" constitutes breach. See Record Document 10 at ¶99. Defendants stress this brevity, particularly the failure to state the specific who, what, and when of the contract, should be dispositive. See Record Document 19-1 at 8. Green Country counters with several pages of direct excerpts from its Amended Complaint, the All Green Employee Handbook, the Policies and Procedure Acknowledgement of the terms in this Handbook, and a non-compete agreement signed by Smith, which together they argue establish plausible factual allegations sufficient to survive a motion to dismiss. See Record Document 27 at 5-12.

The central issue pertaining to the fate of Green Country's breach of contract claim is whether the All Green Employee Handbook and the related Acknowledgement form signed by Defendants constitutes a contract. As correctly stated by Defendants, the overwhelming majority of Louisiana jurisprudence on this issue holds that employee manuals do not confer any contractual rights. See Leger v. Tyson Food, Inc., 95-1055 (La. App. 3 Cir. 1/31/96), 670 So.2d 397, 402; see also Pure Air Daigle, LLC v. Stagg, 2017 WL 11534244 at *10 (W.D. La. Jan. 11, 2017). Although Green Country attempts to distinguish the All Green Employee Handbook from this case law, the terms of the Handbook itself are dispositive. It provides:

> The policies in this Handbook are to be considered as guidelines… Neither this Handbook nor any other All Green documents, confers any contractual right, either express or implied, to remain in All Green's employment. Nor does it guarantee any fixed terms and conditions of your employment.
>
> See Record Document 27 at Ex.

The language used in the All Green Handbook illustrates why such handbooks and manuals are almost always rejected as contractual agreements. More often than not, this paperwork represents a unilateral expression of company policies and procedures running counter to the foundational element of a bargained-for-exchange required under contract law. See generally Wohlschlaeger v. Fairmont Hotel Co., 83 F.3d 419 (5th Cir. 1996). Green Country's attempts to claim a breach of contract stemming from the All Green Handbook, or the Policies and Procedure Acknowledgement rooted in its terms, is unavailing. Without a valid contract that is alleged to have been breached, no claim for breach of contract may proceed.

### G. Unjust Enrichment

Article 2298 of the Louisiana Civil Code states that "a person who has been enriched without cause at the expense of another person is bound to compensate that person." La. Civ. Code Ann. art. 2298. The remedy of unjust enrichment is subsidiary in nature, in that it is only available to fill a gap in the law where no other express remedy is provided. See Walters v. MedSouth Record Management, LLC, 2010- 0353 (La. 6/4/10), 38 So.3d 243, 244. For this reason, unjust enrichment has been labeled a "remedy of last resort." Hall v. James, 43,263 (La. App. 2 Cir. 6/4/08), 986 So.2d 817, 820. Further, "it is not the success or failure of other causes of action, but rather the existence of other causes of action, that determine whether unjust enrichment can be applied." Conerly Corp. v. Regions Bank, 2008 WL 4975080 (E.D. La. Nov. 20, 2008).

Defendants argue Green Country has numerous available remedies, thus precluding an unjust enrichment claim. See Record Document 19-1 at 11. Green Country argues its unjust enrichment claim is an alternative pleading and dismissing it before analyzing the law underlying these claims would be premature. See Record Document 27 at 24-25. The Court has considered this debate previously. See Wiggins v. Chesapeake Energy Corp., 2012 WL 3597131 at *2-3 (W.D. La. Aug. 20, 2012) (holding unjust enrichment claim could not survive 12(b)(6) motion where other remedies were pleaded and available). Other courts within this district and others in Louisiana have held similarly. See e.g., Zaveri v. Condor Petroleum Corp., 27 F. Supp.3d 695, 701-702 (W.D. La. June 19, 2014); Constance v. Austral Oil Exploration Co., Inc., 2013 WL 6578178 at *9 (W.D. La. Dec. 13, 2013); Patterson v. Dean Morris, L.L.P., 2011 WL 1743617 at *7 (E.D. La. May 6, 2011).

Green Country argues that by placing the survival of its breach of contract claim at issue, Defendants have created the possibility for an unjust enrichment claim to be their sole avenue for recovery. See Record Document 27 at 25. This scenario occurred in Williams v. Chesapeake Operating, Inc., as all of the specific claims at issue required a valid contract to be established. See 2011 WL 13160764 at *2 (W.D. La. Sept. 14, 2011). Here, however, Green Country has pled numerous causes of action that do not rely upon a valid contract for recovery. The Court need look no further than the portion of Green Country's Amended Complaint claiming unjust enrichment, as it argues the misappropriation of its "Customer List, reputation, and likeness" have resulted in unjust enrichment to Defendants. See Record Document 10 at ¶106. Southern Green has stated several causes of action with respect to the unlawful acts taken towards these three subjects, including conversion, violations of LUTPA and LUTSA, and trademark claims. See id. With these claims for relief available, the unjust enrichment claims cannot proceed.

### H. Conspiracy Allegations

Finally, Defendants seek dismissal of all conspiracy claims against them. Article 2324 of the Louisiana Civil Code provides that any individual "who conspires with another person to commit an intentional or willful act is answerable *in solido*, with that person, for the damage caused by such act." La. Civ. Code Ann. art. 2324. However, the actionable element in a claim under this provision is not the conspiracy itself, but rather the underlying tort which the conspirators agreed to commit. See Ross v. Conoco, Inc., 828 So.2d 546, 552 (La. 2002) (citing Butz v. Lynch, 97-2166, p. 6 (La. App. 1st Cir. 4/8/98)). In the context of a 12(b)(6) motion to dismiss, conspiracy claims must include specific

factual allegations that, when placed in context, raise a suggestion of a preceding agreement between two individuals. See Jabary v. City of Allen, 547 Fed. App'x. 600, 611 (5th Cir. 2013).

Green Country alleges conspiracy amongst Defendants with respect to counts (1) trademark infringement, (2) trade dress dilution and blurring, (3) fraud, (4) conversion, (5) LUTPA violation, and (6) LUTSA violation. See Record Document 10. Each of these claims specifically, along with the entirety of the Amended Complaint itself, pleads factual allegations detailing concerted actions taken by Defendants together. The Court has found all six of these underlying claims can survive the instant motion to dismiss, and as such, the conspiracy allegations attached to these claims must also be permitted to proceed.

## CONCLUSION

For the stated reasons, Defendants' Partial Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Green Country's claims for treble damages under LUTPA, breach of contract, and unjust enrichment are hereby **DISMISSED**. Green Country's trademark and trade dress claims pertaining to infringement of its pricing scheme shall be **AMENDED** within twenty-eight (28) days of this ruling to clarify its relationship to Real Green Systems. Green Country's remaining claims for relief are permitted to proceed. An order consistent with these terms shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 29th day of January, 2021.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT