## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

**ALL GREEN CORP**                                **CIVIL ACTION NO. 20-121**

**VERSUS**                                         **JUDGE EDWARDS**

**BRIAN WESLEY ET AL**                             **MAGISTRATE JUDGE HORNSBY**


### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment and to Dissolve Preliminary [Injunction] filed by Defendants, Brian Wesley, Monica Rawls, Tim Weatherton, Jeriquies "Jay" Smith, Edd Boyd, and Organny Green Lawns, LLC a/k/a Southern Green Lawn Care ("Southern Green") (R. Doc. 52). The plaintiff, All Green Corporation d/b/a Green Country Lawn and Landscape ("Green Country"), filed an Opposition (R. Doc. 58), and Defendants filed a Reply (R. Doc. 61).

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED** and Green Country's claims against Defendants are **DISMISSED WITH PREJUDICE.**

### I.    BACKGROUND

This case stems from a dispute wherein Defendants allegedly misappropriated the property—intellectual or otherwise—of Green Country, for the benefit of Southern Green.[1]  Both Green Country and Southern Green are lawn care companies in the Shreveport area, and Southern Green was founded by ex-employees of Green

---

[1] R. Doc. 39 at pp. 1-3.

1

Country.[2]  The alleged acts of these ex-employees, in their departure from Green Country and their starting up of Southern Green, give rise to the claims currently before the Court.[3]  As it stands today, Green Country accuses Defendants of trademark infringement, dilution and blurring of their trade dress, fraud, conversion, violating the Louisiana Unfair Trade Practices Act ("LUTPA"), violating the Louisiana Uniform Trade Secrets Act ("LUTSA"), and breach of fiduciary duty.[4]

The Court previously entered a Consent Preliminary Injunction on March 16, 2020, restricting Southern Green from utilizing Green Country's intellectual property and soliciting its customers.[5]  Later, the Court whittled Green Country's claims down to those currently *sub judice* (and listed above) in its Order at R. Doc. 40.[6]

The instant Motion was filed on August 22, 2022, and moves this Court to dismiss Green Country's remaining claims against Defendants, along with dissolving the Preliminary Injunction currently in place.[7]  Defendants argue that Green Country cannot prove causation, nor quantify its damages, and thus cannot recover monetarily.[8]  As for injunctive relief, Defendants assert that Southern Green presents no risk of engaging in the enjoined conduct, and that Green Country cannot demonstrate actual success on the merits.[9]

---

[2] *Id.*
[3] R. Doc. 58 at p. 3.
[4] *Id.* at p. 4.
[5] R. Doc. 18.
[6] R. Doc. 40.
[7] R. Doc. 52 at p. 1.
[8] *Id.*
[9] *Id.*

2

Green Country opposes the Motion, arguing that its alleged failure to quantify its damages under Fed. R. Civ. P. Rule 26(f) cannot give rise to summary judgment.[10] Further, Green Country accuses Defendants of having "conducted no discovery" (which it intimates could have colored-in Defendants' appreciation of Green Country's alleged damages).[11] Green Country finally argues that it is entitled to attorney's fees because it is "already a partially prevailing Plaintiff" by way of our granting the Consent Preliminary Injunction.[12]

In their Reply, Defendants protest Green Country's then-recent supplementing of its Rule 26 disclosures.[13] Further, Defendants argue that Green Country's damages figures—even after this supplementation—remain insufficiently explained.[14] Finally, Defendants challenge Green Country's assertion that it is a partially prevailing party as it relates to the preliminary injunction and attorney's fees.[15]

## II.   LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas,* 843 F.3d 172 (5th Cir. 2016) (quoting

---

[10] R. Doc. 58. at p. 6.
[11] *Id.* at p. 7.
[12] *Id.* at p. 8.
[13] R. Doc. 61 at pp. 2-3.
[14] *Id.* at pp. 4-5.
[15] *Id.* at p. 8.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id.* (internal quotations omitted). In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.,* 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson,* 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

## B. Dissolution of a Preliminary Injunction

Rule 60(b)(5) of the Federal Rules of Civil Procedure permits a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" where "the judgment has been satisfied, released, or discharged; it is based on an earlier

4

judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." The Supreme Court has determined that Rule 60(b)(5) applies to motions to dissolve or modify preliminary injunctions. *See Horne v. Flores*, 557 US 433, 447 (2009). Under this Rule, a party can request "a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne*, 557 US at 447 (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 US 367, 384 (1992)). The party seeking relief bears the burden of establishing that the change in circumstances warrants relief. *Horne*, 557 US at 447.

## III.  ANALYSIS

### A. Trademark Infringement

Just as before, we begin with Green Country's claims under the Lanham Act. 15 U.S.C. § 1125. To prevail on a federal trademark infringement claim, a plaintiff "must show (1) it possesses a legally protectable trademark and (2) Defendants use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship." *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 616 (5th Cir. 2023) (cleaned up). "To be legally protectable, a mark must be 'distinctive' in one of two ways: (1) inherent distinctiveness or (2) acquired distinctiveness through secondary meaning." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 451 (5th Cir. 2017) (citing *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)) (internal quotation marks omitted). Registration of a mark

with the United States Patent and Trademark Office ("PTO") is prima facie evidence that the mark is inherently distinctive. *Id.*

### 1. Inherent Distinctiveness

It appeared previously that the parties agreed that "Green Country" lacked inherent distinctiveness,[16] as the mark is not registered with the PTO, and neither party ever addressed or alleged inherent distinctiveness in their pleadings.[17] Nevertheless, in its Opposition to this Motion, Green Country baldly proclaims for the first time that "'Green Country Lawn' is, as a mark for trademark purposes, 'suggestive' (and, at a minimum, 'descriptive')."[18]  Puzzlingly, Green Country did not further expound upon or clarify this argument, nor did Defendants challenge it in their Reply.  As Green Country failed to sufficiently raise a triable issue of fact as to inherent distinctiveness, and itself described its mark as 'descriptive' the Court will move along to its original "secondary meaning" analysis.[19]

### 2. Secondary Meaning

If a mark is "descriptive" it must acquire its distinctiveness through "secondary meaning." *Streamline Prod. Sys.,* 851 F.3d at 451.  "Secondary meaning occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Amazing Spaces, Inc. v. Metro Mini Storage,* 608 F.3d 225, 247 (5th Cir. 2010) (internal quotation marks and citations

---

[16] R. Doc. 39 at p. 5, n. 3.
[17] R. Doc. 19 at pp. 3-4; R. Doc. 27 at pp. 14-15.
[18] R. Doc. 58 at p. 12.
[19] "Suggestive" marks are inherently distinctive whereas "descriptive" marks are not.  See *Nola Spice Designs,* 783 F.3d at 537 ("While suggestive, arbitrary, and fanciful marks are inherently distinctive, generic marks cannot be distinctive, and descriptive marks are distinctive only if they have acquired "secondary meaning.")

omitted).  In other words, "[t]he mark must denote to the consumer a single thing coming from a single source to support a finding of secondary meaning." *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786, 795 (5th Cir. 1983) (internal quotation marks and citation omitted).

As Green Country will bear the burden of proving secondary meaning at trial, in the summary judgment context, Defendants may merely point to an absence of evidence of secondary meaning, thus shifting to Green Country the burden of demonstrating by competent summary judgment proof that there is a genuine issue of fact warranting trial.  *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir. 1995) (per curiam).  The burden of demonstrating secondary meaning "is substantial and requires a high degree of proof." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 567 (5th Cir. 2005). The determination of secondary meaning is "primarily an empirical inquiry," informed by the following factors:

> (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress [or mark].

*Amazing Spaces*, 608 F.3d at 248 (internal quotation marks and citation omitted). "While none of these factors alone will prove secondary meaning, in combination they may establish the necessary link in the minds of consumers between a product and its source." *Zatarains*, 698 F.2d at 795.  Although secondary meaning is a question of fact, summary judgment may be upheld if the record "compels the conclusion that the movant is entitled to judgment as a matter of law." *Bd. of*

*Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir.2008); *Amazing Spaces*, 608 F.3d at 248–50.

Here, Defendants point out to the Court that Green Country "has no evidence [establishing], and cannot support *at least* the following secondary meaning factors: (3) amount and manner of advertising, (4) nature and use of the mark in newspapers and magazines, (5) consumer-survey evidence." R. Doc. 52-1 at p. 12 (emphasis added). And further, Defendants cite authority explaining that in a borderline case "survey evidence may be necessary to prove trademark perception." *Nola Spice Designs,* 783 F.3d at 546 (internal quotation marks and citations omitted)). Defendants assert that the absence of evidence supporting these factors entitle them to summary judgment as to Green Country's trademark infringement claim.

With the burden now on Green Country to "identify specific evidence in the record and to articulate the precise manner in which that evidence supports [its] claim," it chooses first to mischaracterize Defendants' argument as requiring "all seven" factors to establish secondary meaning.[20] *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). This is neither the law, nor Defendants' recitation of the law. Then, Green Country conclusively states that it has "provided sufficient facts and evidence to overcome summary judgment on this issue."[21] In support of this conclusion, Green Country cites "'Plaintiffs' Response to Defendants' Statement of Uncontested Facts', at §II (and accompanying exhibits)."[22] Well, the Court glared

---

[20] R. Doc. 58 at p. 20.
[21] R. Doc. 58 at p. 20.
[22] *Id.* (citing R. Doc. 58-1 at pp. 7-10).

8

arduously at §II, and even §I, and found nothing remotely sufficient to establish secondary meaning.[23]  As "unsubstantiated assertions are not competent summary judgment evidence," and as "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," Green Country has failed to meet its burden as to secondary meaning. *Celotex,* 477 U.S. at 324; *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992).  At the 12(b)(6) stage, the Court warned Green Country that its claims would "certainly need additional sprucing with respect to the numerous secondary meaning factors."[24]  No sprucing was done, and Green Country's evidence remains woefully insufficient to controvert secondary meaning.  Thus, summary judgment as to the trademark infringement claim is appropriate.  *See Smack Apparel*, 550 F.3d at 474 (affirming grant of summary judgment where plaintiff failed to raise a genuine issue of fact on secondary meaning).

## B. Trade Dress

Under the Lanham Act, "trade dress" is also protectable. *See Test Masters,* 791 F.3d at 565) ("An unregistered trade dress may be protectable under section 43(a) of the Lanham Act if the trade dress is distinctive and nonfunctional.")  Trade dress "refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Id.*  The protectability of trade dress is determined by the same test as used above for trademarks. *Amazing Spaces,*

---

[23] R. Doc. 58-1.
[24] R. Doc. 39 at p. 8.

608 F.3d at 235, n. 8.  Thus, a plaintiff must demonstrate that their trade dress has either: "(1) inherent distinctiveness or (2) acquired distinctiveness through secondary meaning." *Streamline Prod. Sys.,* 851 F.3d at 451 (citing *Nola Spice Designs,* 783 F.3d at 536) (internal quotation marks omitted).

Green Country's only consistent trade dress claim has been for their "green and yellow" color scheme.[25]  As the colors green and yellow can never be inherently distinctive, the Court will conduct only a secondary meaning analysis.  *Wal-Mart Stores,* 529 U.S. at 211 (2000) ("Indeed, with respect to at least one category of mark—colors—we have held that no mark can ever be inherently distinctive.")

Defendants and Plaintiff alike consolidated their secondary meaning arguments as to both trademark and trade dress.  Again, the inquiry relies on the following factors:

> (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress [or mark].

*Amazing Spaces*, 608 F.3d at 248 (internal quotation marks and citation omitted).  For the same reasons that Green Country failed to establish secondary meaning as to its word mark, the Court finds it to have failed in establishing secondary

---

[25] *See* R. Doc. 42 at p. 5, p. 17.  Nevertheless, Green Country states in their Opposition to the instant Motion that Southern Green's website—along with using a green and yellow color scheme—utilizes a "nearly identical layout" and "identical information regarding the services it provides" in comparison to Green Country's website. R. Doc. 58 at pp. 8-9.  Layout cannot be inherently distinctive.  *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000) ("Design … is not inherently distinctive."). And "information" is not trademarkable.  If such expressions of "information" were protectable, they would be only as a copyright. *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1344 (5th Cir. 1994) ("Copyright protects the expression of ideas.").

meaning as to its trade dress. As above, Defendants pointed out Green Country's lack of support as to the secondary meaning of its trade dress.[26] No exhibit to Green Country's pleadings establishes the secondary meaning of its green and yellow color scheme. No affidavit of any customer, or consumer from the area, establishes that Green Country's trade dress has been used to advertise or distinguish the business in any significant way. *Amazing Spaces*, 608 F.3d at 248. In short, Green Country has no evidence to support that its green and yellow color scheme, or its website design, is notorious enough to have become a source identifier for Green Country's lawn care services. "Secondary meaning occurs when, in the minds of the public, the primary significance of a mark is to *identify* the *source* of the product rather than the product itself." *Smack Apparel*, 550 F.3d at 476 (emphasis added). As it lacks secondary meaning, Green Country's trade dress is not protectable, and accordingly is not capable of being infringed. *See Nola Spice Designs*, 783 F.3d at 547 ("The overwhelming evidence demonstrates that Haydel's marks are not distinctive and therefore not protectable. Because a mark's legal protectability is an element of a trademark infringement claim, the district court properly granted summary judgment to Nola Spice on its claim for a declaratory judgment that it was not infringing Haydel's marks.").

---

[26] R. Doc. 52-1 at p. 12.

### C. Fraud

Green Country also makes a delictual fraud claim pursuant to Louisiana Civil Code article 2315.[27]  The elements of this cause of action are: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury."  *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir. 1993) (cleaned up).  To recover under article 2315, Green Country need not prove the existence of a contract.  *Id.*

To start, both Green Country and Defendants give "short shrift" to this cause of action.[28]  It is the Court's preference, and probably the law, that if one is seeking or opposing summary judgment, they should tell us why they are doing so.  Defendants, who shoulder the initial burden under Rule 56, provide a footnote informing the Court that fraud requires proof of causation and damages to prevail.[29]  As they chose to merge their causation and damages arguments as to all of Green Country's claims, the Court will consider their causation and damages arguments as to fraud first.[30]

Causation and injury are both contained in the third element of delictual fraud. *Newport,* 6 F.3d at 1068.  If either fails, no fraud occurred.  Defendants offer that no evidence in the record exists that could establish a causal link between Defendants alleged misrepresentations and any injury sustained by Green Country.[31]  This point

---

[27] Green Country refers to their fraud claim as "common law fraud." R. Doc. 42 at p. 18.  In Louisiana, we have contractual fraud and delictual fraud. Contractual fraud is found in the Louisiana Civil Code at article 1953, whereas delictual fraud flows from article 2315.  Since the Court has already held that Defendants were not contractually bound to Green Country, the claim can only be delictual fraud. R. Doc. 39 at pp. 16-17; *see Equilease Corp. v. Smith Int'l, Inc.*, 588 F.2d 919, 923, n. 4 (5th Cir. 1979).
[28] R. Doc. 58 at p. 2.
[29] R. Doc. 52-1 at p. 15, n. 43.
[30] *Id.* at pp. 15-18.
[31] R. Doc. 52-1 at pp. 17-18.

is well taken insofar as it refers to Defendants, exclusive of Monica Rawls. Furthermore, Green Country's conclusion that it has "provided more than sufficient bases and evidence" as to causation is unsupported insofar as it relates to any injury suffered due to Defendants' misrepresentations to *third persons*.[32]  Not only because Green Country has no evidence that Defendants' misrepresentations to third persons caused it injury, but also because, in order for Green Country to have been defrauded, the misrepresentations must have been made to Green Country itself.  *See People Source Staffing Pros. LLC v. Robertson,* No. 3:19-CV-00430, 2021 WL 2292801, at *8 (W.D. La. June 3, 2021), *aff'd sub nom. People Source Staffing Pros., L.L.C. v. Robertson*, No. 21-30368, 2022 WL 3657186 (5th Cir. Aug. 25, 2022) ("There is a missing element of the fraud claim because there was no misrepresentation nor suppression of the truth by any of the Defendants that substantially influenced People Source's course of conduct. Therefore, the cause of action for conspiracy to commit fraud fails.")  The only *possible* misrepresentation to Green Country—bringing about the only cognizable injury—lies in Monica Rawls cancellation of sixteen appointments.[33]  But because Green Country has failed to show the existence of any injury to Green Country flowing from Ms. Rawls' cancellation of these sixteen appointments, summary judgment is appropriate.  Green Country's attachment of records purporting to show every customer that left their patronage in the year 2020, is not sufficient to support a claim of fraud regarding Ms. Rawls' actions.[34]  No

---

[32] R. Doc. 58 at pp. 22-23.
[33] R. Doc. 58 at pp. 9-10.
[34] R. Doc. 58-17 at pp. 4-17.

affidavit, nor document, establishes any injury suffered by Green Country due to these cancellations, thus the claim of fraud against Ms. Rawls fails.

### D. Louisiana Unfair Trade Practices Act ("LUTPA")

Green Country also makes a claim under the Louisiana Unfair Trade Practices Act, ("LUTPA"). LA. REV. STAT. 51:1401, et seq. LUTPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." LA. REV. STAT. § 51:1405. LUTPA provides a cause of action both for trade practices which are "unfair" and those which are "deceptive." *Jefferson v. Chevron U.S.A., Inc.*, 97–2436, 98–0254 (La. App. 4 Cir. 5/20/98); 713 So.2d 785, 792. "A trade practice is unfair under the statute only when it offends established public policy and is immoral, unethical, oppressive or unscrupulous." *Id.* (quoting *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir.2000)). What constitutes an unfair trade practice is determined by the courts on a case-by-case basis. *Id.* The range of prohibited practices under LUTPA are "extremely narrow", with only "egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct" being actionable. *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So. 3d 1053, 1060 (La. 2010).

As for relief, LUTPA provides for both monetary and injunctive relief. LA. REV. STAT. 51:1401, et seq. However, Defendants are correct that only the Attorney General of Louisiana may seek injunctive relief under the statute.[35] *See Camowraps,*

---

[35] R. Doc. 52-1 at pp. 8-9.

14

*LLC v. Quantum Digital Ventures LLC*, No. CIV.A. 13-6808, 2015 WL 2229280, at *2 (E.D. La. May 12, 2015) (wherein the court, after performing a well-reasoned statutory and jurisprudential analysis, held that a private plaintiff could not "obtain injunctive relief pursuant to LUTPA.")  As far as the Court is aware, the Attorney General has yet to enjoin Defendants at the behest of Green Country.  And we have already found Green Country ineligible for *treble* damages under the statute.[36]  Thus, the only LUTPA question before the Court is whether Green Country is entitled to "actual damages."  LA. REV. STAT. § 51:1409(A).

Defendants' LUTPA-specific discussion was confined to whether injunctive relief was proper in these circumstances pursuant to the statute.[37]  Likewise, Green Country did not discuss LUTPA aside from their agreeing with Defendants' point regarding injunctive relief, but clarified that injunctive relief remains available under other causes of action.[38]  Nevertheless, as proof of actual losses is required to recover actual damages under LUTPA, the Court need only consider the damages arguments made by Defendants and Green Country.[39]  *See Camowraps, LLC v. Quantum Digital Ventures LLC,* 74 F. Supp. 3d 730, 742 (E.D. La. 2015) ("LUTPA … permits recovery of 'actual damages.' LA. REV. STAT. § 51:1409(A). The same absence of any evidence of quantified actual losses is fatal to any recovery of actual damages under LUTPA.")  As Defendants pointed out Green Country's lack of support for its damages figure, and as Green Country failed to demonstrate a genuine factual issue as to whether it incurred

---

[36] R. Doc. 39 at pp. 15-16.
[37] R. Doc. 52-1 at pp. 8-9.
[38] R. Doc. 58 at p. 17, n. 10.
[39] R. Doc. 52-1 at pp. 13-17; R. Doc. 58 at pp. 19-22; R. Doc. 61 at pp. 1-6.

any ascertainable damage, summary judgment is appropriate.   Notwithstanding Green Country's failure to timely calculate or disclose its damages, neither the spreadsheet[40] encompassing every customer that left, for every reason, in 2020, nor the profit and loss statement,[41] could establish that Green Country suffered actual damages from the actions of Defendants.  In cases involving state tort law claims, the Fifth Circuit has held that failure to identify evidence of damages in a summary judgment response is fatal to the claim at issue. *See, e.g., Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (grant of summary judgment on fraud claim affirmed because plaintiff did not identify any evidence of damages in summary judgment response).  And while the Court agrees that "the amount of damages to be awarded is itself inherently fact-driven,"[42] and that damages calculations do not have to be "precise or exact"[43] to overcome summary judgment, the Court finds that Green Country has failed to show any competent evidence to support its damages figure, or a causal link to Defendants' actions.   Accordingly, summary judgment is appropriate as to Green Country's actual damages claim under LUTPA as well.

### E.  Louisiana Uniform Trade Secrets Act ("LUTSA")

Green Country also makes a claim under the Louisiana Uniform Trade Secrets Act, ("LUTSA").  LA. REV. STAT. § 51:1431, et seq.  To recover damages under LUTSA, "a complainant must prove (a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation."

---

[40] R. Doc. 58-17 at pp. 4-17.
[41] *Id.* at p. 18. It is also unclear whether this statement encompasses all of All Green's business lines.
[42] R. Doc. 58 at p. 19.
[43] Id. at p. 21.

*Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997) (internal citations omitted) (citing LA. REV. STAT. §§ 51:1431, 1433). "A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." § 51:1433. Further, to prevail on a LUTSA claim, "[a] plaintiff need not prove precise damages, indeed, uncertainty in damages should not preclude recovery." *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 157 (5th Cir. 2018) (cleaned up). But a plaintiff must be able to show "the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." *Id.*

Green Country's LUTSA claim is predicated on whether its Customer List qualifies as a "trade secret." *Reingold,* 126 F.3d at 648. In order for a customer list to qualify as a trade secret, there must be efforts "made to protect its secrecy." *Innovative Manpower Solutions, LLC v. Ironman Staffing, LLC*, 929 F. Supp.2d 597, 612 (W.D. La. Mar. 7, 2023) (citing Louisiana cases). Importantly, Defendants are silent as to whether they believe the Customer List to be a trade secret. And as noted by this Court previously, Green Country continually refers to its Customer List as a trade secret, except for in the pleadings instantly before the Court.[44] As Green Country does make an argument as to LUTSA, and as LUTSA relief is predicated on the existence of a trade secret, we assume that it continues to assert the List's status as a trade secret. Again, Defendants do not attack this assertion in their Motion or Reply. It appears that no evidence in the record speaks to any protective measures taken to

---

[44] R. Doc. 39 at p. 13.

guard Green Country's customer list.  Nevertheless, the Court needn't decide this issue, as Green Country's LUTSA claim fails for the same reason as its LUTPA claim—its inability to create a genuine issue of material fact as to damages.  Even under the lax standard for trade secret damages, the Court finds that Green Country's evidence does not muster a "reasonable" approximation.  *Brand Servs.,* 909 F.3d at 157.  Accordingly, summary judgment is appropriate as to Green Country's LUTSA claim, as well.

### F. Conversion

Green Country also makes a conversion claim against Defendants.  LUTSA and conversion claims may not co-exist as to the same contested article, because misappropriation of a "trade secret" may not be prosecuted under a theory of conversion.  *Brand Servs.,* 909 F.3d at 158.  The Customer List, having been allegedly taken by at least Brian Wesley, and perhaps Monica Rawls, is the property claimed to have been converted.[45]  We needn't reach its status as a trade secret, however, because conversion too requires proof of damages, which Green Country fails to show for the reasons previously stated herein.  *See Iturralde v. Shaw Grp., Inc.,* 512 F. App'x 430, 435 (5th Cir. 2013) ("Although Louisiana courts do not discuss conversion in terms of its constituent elements, Iturralde's failure to offer any evidence of damages was fatal to his claim at the summary judgment stage.")  Accordingly, summary judgment is appropriate as to Green Country's conversion claim.

---

[45] R. Doc. 58 at pp. 10-11.

### G. Breach of Fiduciary Duty

Green Country contends that "Wesley, Rawls, Weatherton, Smith, and Boyd" breached a fiduciary duty that they owed to Green Country.[46]   As a general proposition, for a fiduciary duty to exist, there must be a fiduciary relationship between the parties.  *Scheffler v. Adams and Reese, LLP*, 2006–1774 (La.2/22/07); 950 So.2d 641, 647.  An employee owes his employer a duty to be loyal and faithful to the employer's interest and business.  *ODECO Oil & Gas Co. v. Nunez*, 532 So.2d 453, 463 (La. App. 1st Cir. 1988) (citing *Dufau v. Creole Engineering, Inc.,* 465 So.2d 752 (La. App. 5th Cir.), *writ denied,* 468 So.2d 1207 (La. 1985)).  He is duty-bound not to act in antagonism or opposition to the interest of the employer. *Neal v. Daniels,* 217 La. 679, 682, 47 So.2d 44 (La. 1950).  However, this duty of allegiance does not rise to the level of a fiduciary duty unless the employee is also an agent or mandatary of his employer.  LA. PRAC. EMPLOYMENT LAW § 14:14 (2011–2012 ed.).

Two other Divisions of this Court, when presented with nearly analogous scenarios to the present case, found that employees situated similarly to Brian Wesley, Monica Rawls, Tim Weatherton, Jay Smith, and Edd Boyd, did not owe a fiduciary duty to their employers and thus could not be liable for breach.  *People Source Staffing Pros.,* No. 3:19-CV-00430, 2021 WL 2292801, at *7; *Innovative Manpower Sols., LLC v. Ironman Staffing, LLC*, 929 F. Supp. 2d 597, 609 (W.D. La. 2013).   Neither Defendants' signing of an employment agreement, nor their receiving a copy of an employee handbook, established a fiduciary duty.  *People Source Staffing Pros.,* No.

---

[46] R. Doc. 42 at p. 24.

3:19-CV-00430, 2021 WL 2292801, at *7.   According to Green Country itself, the Defendants here were mere employees of Green Country—Ms. Rawls was an "Office Manager"; Mr. Wesley was an "Operations Manager"; Tim Weatherton was a "Technician"; Jay Smith was a "Technician"; and Edd Boyd was a "Sales Manager."[47] As none of the Defendants here were an "officer, director, or owner of" Green Country, no fiduciary duty existed, and summary judgment is appropriate.   *People Source Staffing Pros.,* No. 3:19-CV-00430, 2021 WL 2292801, at *7.   Alternatively, Green Country again failed to make a showing of damages as required to prevail on a breach of fiduciary duty claim, so summary judgment is appropriate on that ground as well. *F.D.I.C. v. Barton,* 233 F.3d 859, 864 (5th Cir. 2000).

### H. Conspiracy

A conspiracy to engage in a tort cannot exist if no underlying tort exists, thus, Green Country's conspiracy claim cannot stand.   Article 2324 of the Louisiana Civil Code provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable in *solido*, with that person, for the damage caused by such act."  La. Civ. Code art. 2324.   Article 2324, however, does not by itself impose liability for a civil conspiracy.   "The actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part."  *Ross v. Conoco, Inc.*, 2002-0299 (La. 10/15/02), 828 So. 2d 546, 551–52.   As no tort has been committed, no conspiracy has

---

[47] R. Doc. 42. at p. 2.

either.   Accordingly, summary judgment is appropriate as to Green Country's conspiracy claims.

## I.  Preliminary Injunction

As preliminary injunctions may not endure past the resolution of the merits of a case, and as this case has no remaining claims, the Consent Preliminary Injunction currently in place must terminate.  11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2947 (3d ed.) ("A preliminary injunction remains in effect until a final judgment is rendered or the complaint is dismissed, unless it expires earlier by its own terms, or is modified, stayed, or reversed.")  We agree with Green Country that if this Court "determine[s] that summary judgment is appropriate on all claims, then, necessarily, the preliminary injunction would no longer be applicable."[48]  As we have so determined, the preliminary injunction must be dissolved.

## J.  Permanent Injunction

Green Country also seeks a permanent injunction requiring that Defendants refrain from using Green Country's Customer List, refrain from using Green Country's "name or likeness," and refrain from using Green Country's "color scheme, design and likeness."[49]  For its trademark and trade dress claims, Green Country is not entitled to permanent injunctive relief under the Lanham Act, as neither its word mark nor its trade dress are protectable, as previously discussed.  *See Nola Spice Designs*, 783

---

[48] R. Doc. 58 at p. 18 (citing *Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, L.L.C.,* 782 F.3d 186, 191 (5th Cir. 2015).
[49] R. Doc. 42 at p. 25.

F.3d at 547. Similarly, Green Country is also not entitled to injunctive relief under LUTPA, as it is not the Attorney General of Louisiana, as previously discussed. *Camowraps,* No. CIV.A. 13-6808, 2015 WL 2229280, at *2. Finally, Green Country is not entitled to injunctive relief as it relates to its Customer List, as it cannot show an immediate threat posed by Defendants to use the list. *See Tubular Threading, Inc. v. Scandaliato,* 443 So. 2d 712 (La. Ct. App. 1983). Another Division of this Court found, under similar circumstances, an injunction inappropriate when the person who took the customer list of his ex-employer gave undisputed testimony that he no longer possessed the list. *Johnson Controls, Inc. v. Guidry*, 724 F. Supp. 2d 612 (W.D. La. 2010). Much like in *Johnson Controls,* it is the undisputed testimony of Defendants that they no longer possess the Customer List, nor the means to access the List, thus, they are no longer capable of using the List in a manner detrimental to Green Country.[50] *Id.* And while Green Country contends[51] that Ms. Rawls accessed the Customer List through a software program in the days leading up to her departure, such evidence[52] does not contravene Ms. Rawls declaration that she did not take the Customer List with her when she left Green Country, nor her declaration that she does not have a copy currently.[53] As any injunction would serve to protect Green Country from a threat that could not possibly occur, such relief may not issue here. Permanent injunctions must serve a purpose, and Green Country is not entitled to a useless one. *See Lionhart v. Foster*, 100 F. Supp. 2d 383, 385–86 (E.D. La. 1999)

---

[50] R. Doc. 52-4, R. Doc. 52-7, R. Doc. 52-9, R. Doc. 52-10.
[51] R. Doc. 58 at p. 15.
[52] R. Doc. 58-9.
[53] R. Doc. 52-9.

(Vance, J.) ("[T]he moving party must show a substantial threat of irreparable injury if the injunction is not granted.")

### K. Attorneys' Fees

Green Country seeks an award of attorneys' fees as well.[54]  First, Green Country is not entitled to statutory attorneys' fees under the Lanham Act, LUTPA, or LUTSA, as we have dispensed of its underlying claims brought pursuant to those statutes. Second, its delictual fraud claim also cannot yield attorneys' fees, primarily because we have found its claim without merit, but also because attorneys' fees are only available for contractual fraud, not delictual fraud.  *See J & L Fam., L.L.C. v. BHP Billiton Petroleum Properties (N.A.), L.P*, 293 F. Supp. 3d 615, 624 (W.D. La. 2018) ("Because Article 2315 does not expressly provide for attorney fees, Louisiana courts have held that attorney fees are not available in tort actions.")  Finally, the fact that the parties entered into a consent preliminary injunction does not make Green Country a "partially prevailing Plaintiff" as it contends.[55]  Green Country's reliance on a §1988 case is misplaced for two reasons.[56]  42 U.S.C. § 1988.  First, §1988 is an exception—crafted by Congress to accompany §1983 claims—to the general rule that litigants pay their own attorneys' fee.  *Veasey v. Abbott*, 13 F.4th 362, 367-8 (5th Cir. 2021); 42 U.S.C. § 1988.  This is not a civil rights case, and §1988 plainly does not apply.  *See id.*  Second, in cases where §1988 would apply, a party is no longer "partially prevailing" and thus not eligible for attorney's fees, if the court dissolves the

---

[54] R. Doc. 58 at 23.

[55] R. Doc. 58. at p. 8.

[56] R. Doc. 58 at pp. 23-24 (citing *Veasey v. Abbott,* 13 F.4th 362 (5th Cir. 2021)).

injunction, which we do here.  *Sole v. Wyner,* 551 U.S. 74, 83 (2007) ("Prevailing party status, we hold, does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case.") Thus, Green Country is not entitled to any attorneys' fees under any theory raised.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment[57] is **GRANTED,** and Green Country's claims against Defendants are **DISMISSED WITH PREJUDICE.**  A judgment consistent with this ruling shall be issued accordingly.

**THUS DONE AND SIGNED** this 16th day of December, 2024.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[57] R. Doc. 52.